**CONFIDENTIAL SETTLEMENT AGREEMENT
AND LIMITED RELEASE OF CLAIMS**

This Settlement Agreement and Limited Release of Claims ("Agreement") is made and entered into by Named Plaintiff, Billy Ray Wooldridge ("Named Plaintiff" or "Wooldridge"), on behalf of himself and on behalf of Opt-in Plaintiffs Daniel Crider, Christopher Crumbley, Charles Dillard, and Michael Dowdy (collectively "Opt-in Plaintiffs"), and Gateway Transportation of Georgia, Inc. and all of its past, present, and future parents, subsidiaries, and affiliates, including all of its past, present, and future shareholders, officers, directors, employees, agents, insurers, and legal counsel (hereinafter collectively referred to as "Defendant" "Gateway," or "Company"). Collectively, the Named Plaintiff and the Opt-in Plaintiffs shall be referred to as "Plaintiffs." The Named Plaintiffs, Opt-in Plaintiffs, and Defendant shall be referred to jointly as the "Parties" and singularly as a "Party."

**WHEREAS**, Named Plaintiff filed the lawsuit styled *Billy Ray Wooldridge, et al. v. Gateway Transportation of Georgia, Inc.*, No. 4:19-cv-00053-HLM-WEJ (the "Lawsuit");

**WHEREAS**, Opt-in Plaintiffs executed consents to join the Lawsuit whereby they agreed to be bound by the decisions of Named Plaintiff on matters including settlement;

**WHEREAS**, Plaintiffs in the Lawsuit allege Fair Labor Standards Act ("FLSA") overtime claims against Defendant;

**WHEREAS**, the Parties wish to terminate all past, present, and potential controversies between the Parties; to compromise and settle the Parties' differences; and to dismiss Defendant from the Lawsuit with prejudice;

**WHEREAS**, Defendant denies that it has committed any wrongdoing or violated any state or federal law pertaining to the payment of wages and has defended the Lawsuit;

**WHEREAS**, the Parties agree that there are bona fide disputes between them with respect to (a) Plaintiffs' entitlement to payment for the Lawsuit; (b) the legal entitlement to the amounts claimed in the Lawsuit; and (c) the facts that are the basis for the allegations made in the Lawsuit;

**WHEREAS**, the Parties, in view of the costs, risks, and delays of continued litigation and appeals balanced against the benefits of settlement believe that settlement of the Lawsuit as provided in this Agreement is in each of their best interests, and counsel for Plaintiffs specifically and separately agree that the settlement as provided in this Agreement is in the best interests of the Plaintiffs and is a fair, reasonable, and adequate resolution of the Lawsuit;

**WHEREAS**, the Parties desire and intend to seek Court approval of the settlement of the claims against Defendant in Lawsuit as set forth in Section 1 of this Agreement and, if approved, to seek an entry of an Order of Dismissal of the claims in this Lawsuit with prejudice;

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements herein contained, and other valuable consideration, the sufficiency of which is hereby

acknowledged, the Parties agree to terminate past, present, and potential controversies between the Parties regarding the Lawsuit, and covenant and agree as follows:

1. **Approval of Settlement:** All terms of this Agreement are contingent upon the approval of the Court, and this Agreement is entered into voluntarily by the Parties for settlement purposes only.

    a. The Parties agree to cooperate and present to the Court, if necessary, for its consideration in connection with the approval of the Agreement appropriate motions and competent evidence as may be requested by the Court subject to the appropriate standards for approving a settlement under the FLSA.

    b. The Parties and their counsel will, contemporaneously with their execution of this Agreement, execute a (i) Joint Motion to Approve Settlement Agreement to be filed with the Court, seeking final approval of their proposed settlement of the Lawsuit, as set forth in this Agreement; and (ii) Proposed Order Approving Settlement and Dismissing the Lawsuit with prejudice.

2. **Settlement Approval Procedure:** This Agreement will become final and effective upon the occurrence of all of the following events:

    a. Execution of this Agreement by the Named Plaintiff, Defendant, and their respective counsel of record;

    b. Entry of an Order by the Court granting approval of this settlement;

    c. Entry of an Order by the Court dismissing the Lawsuit;

    d. Defendant's tender of the net settlement amounts in 4(b) below to Plaintiffs and legal fees and costs to the Vaught Firm, LLC.

3. **Effect of Non-Approval:** Except as provided below, in the event that any of the conditions specified in this Agreement are not satisfied, or in the event that this Agreement does not obtain approval of the Court for any reason, all matters covered by the Agreement, shall, for all purposes, be null and void.  In such event, nothing in this Agreement shall be used or construed by or against any Party as a determination, admission, or concession of any issue of law or fact in the Lawsuit and the Parties do not waive, and instead expressly reserve their respective and all rights with respect to the prosecution and defense of the Lawsuit as if the Agreement never existed. If voided, the Parties further agree to extend any necessary deadlines in the Lawsuit, or where necessary, request the Court to do so. However, should the Court deny any of the legal fees and/or costs set forth in this Agreement as to Plaintiffs' counsel, or any of them, such amounts not approved shall be re-allocated to the Plaintiffs on a proportionate basis to their respective gross settlement amounts in this Agreement.

4. **Benefits Under Settlement Agreement:**

a. **Gross Settlement Amount**: The gross amount available to the Plaintiffs and their attorneys is **SEVEN THOUSAND FIVE HUNDRED DOLLARS ($7,500.00)** (the "Gross Settlement Amount"). As set forth in Sections 4(c) and 4(d) below, the Gross Settlement Amount consists of (1) the negotiated individual settlement payments to the Named Plaintiff and Opt-in Plaintiffs and (2) a separately negotiated award of attorneys' fees and costs. For purposes of settlement of the claims of Plaintiffs only, the Parties shall file a joint motion to certify a collective action, consisting of only Plaintiffs and Defendant, and approve this Agreement.

b. **Payment of the Gross Settlement Amount**: Within fifteen (15) calendar days following Court approval of the settlement, Defendant will send settlement payments as follows to the Vaught Firm, LLC, 1910 Pacific Ave., Suite 9150, Dallas, Texas 75201. The Vaught Firm, LLC shall forward each of the Plaintiffs' checks to the Plaintiffs' last known address via First Class U.S. Mail.

c. **Negotiated Individual Settlement Payments to Plaintiffs**

   (1) After the Court approves the settlement/this Agreement, Defendant shall forward settlement checks in the amounts below to Plaintiffs pursuant to Section 4(c). Each Plaintiff shall receive two checks made payable to the respective Plaintiff as shown below. One check shall equal to 50% of their respective gross settlement allocations from which payroll taxes are withheld and submitted by Defendant that is paid pursuant to a W2 and a second check shall equal to 50% of their respective gross settlement allocations from which no payroll taxes are withheld that is paid pursuant to a 1099.

| Plaintiff's Name | Gross Settlement Amount Allocation Per Plaintiff | Settlement Amount Paid to Each Plaintiff via a W2 | Settlement Amount Paid to Each Plaintiff via a 1099 |
|---|---|---|---|
| Billy Ray Wooldridge | $3,000.00 | $1,500.00 | $1,500.00 |
| Daniel Crider | $1,000.00 | $500.00 | $500.00 |
| Christopher Crumbley | $300.00 | $150.00 | $150.00 |
| Charles Dillard | $1,000.00 | $500.00 | $500.00 |
| Michael Dowdy | $300.00 | $150.00 | $150.00 |
| Total | $5,600.00 | $2,800.00 | $2,800.00 |

   (2) Any of the Plaintiffs who does not cash a settlement check within 365 days after it is mailed to the last known address for each person shall receive no money under this Settlement Agreement and shall receive no money relative to the claims asserted in the Lawsuit. Defendant may cancel payment on

    each and every such non-negotiated check after the expiration of that time period.

   (3) For the avoidance of doubt, upon the Court's approval of this settlement and Defendant's tender of the settlement payments in accordance with this Agreement, there is a full and final settlement of all claims referenced in Section 5 of this Agreement for all Plaintiffs (Named and Opt-in Plaintiffs) regardless of whether or not a Plaintiff cashes his settlement check(s) or signs any of the other settlement documentation.

  d. **Attorneys' Fees and Costs:** Plaintiffs' attorneys, Vaught Firm, LLC, shall be entitled to an attorneys' fee award, including costs, in the amount of $1,900.00 which will be paid from the Gross Settlement Amount identified in Section 4(a) above. Defendant shall mail a check made payable to the Vaught Firm, LLC to the address and within the deadline set forth in Section 4(c) above.

5. **Actions by Plaintiffs**: For and in consideration of the actions by Defendant in Section 4 of this Agreement, to which consideration Plaintiffs acknowledge they would not otherwise be entitled, Plaintiffs hereby agree to the following:

  a. **General Release by Wooldridge:** In exchange for the considerations recited in Section 4 of this Agreement, Wooldridge hereby and forever releases, acquits, and discharges Defendant, which includes its attorneys and past, present, and future divisions, affiliates, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies from any and all claims, causes of action, demands, debts, obligations, damages, or liability of any nature whatsoever, known or unknown, that were alleged, could have been alleged, may be based in whole or in part upon, do or may arise out of, or are or may be related to or in any way connected with his employment relationship with Defendant as well as the claims or the facts, matters, transactions, or occurrences referred to in the Lawsuit, and any other claims under the FLSA and all other local, state, or federal laws relating to wage and hour compensation up to the execution of this Agreement. All such claims, if any and including any and all claims for attorneys' fees, costs, expenses and the like, are hereby compromised, settled, and extinguished in their entirety.

  b. **Wage and Hour Release By All Opt-in Plaintiffs:** In exchange for the considerations recited in Section 4 of this Agreement, each Opt-in Plaintiff does hereby and forever release, acquit, and discharge Defendant, which includes its attorneys and past, present, and future divisions, affiliates, predecessor, successors, shareholders, officers, directors, employees, agents, trustees, representatives, administrators, fiduciaries, assigns, subrogees, executors, partners, parents, subsidiaries, and privies from any and all claims, causes of actions, demands, debts, obligations, damages or liability, known or unknown, which concern or relate in any way to the payment of wages or bonuses or any other form of compensation under the FLSA or any other federal, state or local wage-and-hour law whether

those claims exist, or allegedly exist, at law or in equity under the common law, contract law, statutory law, the Fair Labor Standards Act, 29 U.S.C. §§201, et seq., and state wage laws. The released claims are intended to include any and all claims that were raised in the Lawsuit, and any and all claims for attorneys' fees, costs, and expenses and the like, including but not limited to, any claims for attorneys' fees related to services rendered by the Plaintiffs' counsel of record in the Lawsuit and/or any other counsel who has provided services to the Plaintiffs.

6. **Terms of Settlement and Representation by Counsel:** As a result of arm's-length negotiations, a settlement of the issues raised in the Lawsuit was reached as memorialized herein in this Agreement. All of the Parties acknowledge that they have been appropriately and adequately represented by counsel throughout all negotiations which preceded the execution of this Agreement and that this Agreement has been executed with the consent and on the advice of such counsel. The Parties believe this Settlement Agreement is a fair, adequate, and reasonable settlement of the Lawsuit and have arrived at this Settlement Agreement in arms-length negotiations, taking into account all relevant factors, present and potential.

7. **Confidentiality:** Other than with regard to the process of obtaining the Court's approval of the parties' settlement, Wooldridge, Crider, Dillard, Dowdy, and Crumbley agree that they will keep the terms, amount, nature, and contents of this Agreement and the circumstances and events leading up to the preparation and conclusion of this Agreement strictly and completely confidential. Wooldridge, Crider, Dillard, Dowdy, and Crumbley shall not communicate or otherwise disclose to any employee of Gateway (past, present or future) or to any member of the general public (other than their attorney, tax advisor, spouse, pursuant to lawful subpoena, or as may otherwise be required by law), the terms, amount, nature, and contents of this Agreement and the circumstances and events leading up to the preparation and conclusion of this Agreement. Wooldridge, Crider, Dillard, Dowdy, and Crumbley agree that if they reveal any such information to any person, association, firm, corporation or the media, including but not limited to any past, present or future or prospective employee or applicant for employment with Gateway Transportation, then such act shall be deemed and treated as though it were a breach of this paragraph, for which Gateway Transportation will suffer damages. In the event that someone asks Wooldridge, Crider, Dillard, Dowdy, or Crumbley about the Action or their employment with Gateway, the only permitted response shall be that "all matters related to minimum wage and overtime pay have been resolved pursuant to a confidential settlement without any admission of wrongdoing" or words of substantially similar substance and intended impact.

   Wooldridge, Crider, Dillard, Dowdy, and Crumbley agree that they will not in any way criticize, speak negatively about, disparage, libel or slander Gateway or its agents, present and former officers, directors, or employees either orally or in writing at any time in the future. Gateway agrees that its management level employees with personal knowledge of this Agreement will not in any way criticize, speak negatively about, disparage, libel or slander Wooldridge, Crider, Dillard, Dowdy, and/or Crumbley. Wooldridge, Crider, Dillard, Dowdy, and Crumbley further agree that they will refrain from making any social media posts or comments about their employment with Gateway Transportation, or about

any of its members or employees, other than to generally state they were employed with Gateway Transportation, and if any such non-permissible posts or comments have been previously made, then Wooldridge, Crider, Dillard, Dowdy, and Crumbley agree that they will take any and all actions necessary in order to attempt to have them removed or deleted. Wooldridge, Crider, Dillard, Dowdy, and Crumbley likewise agree to refrain from making any reviews or comments about their employment with Gateway Transportation to any third parties (for example on Glassdoor, Indeed, Valut, or any other similar forum), and represents and warrants that they have not made any such reviews or comments to date. Nothing in this Agreement prohibits Wooldridge, Crider, Dillard, Dowdy, and/or Crumbley from listing Gateway as a former employer on any resume, including electronic listings of their employment history. Gateway agrees that if contacted by a prospective employer, the company will provide Wooldridge, Crider, Dillard, Dowdy, and Crumbley dates of employment, position held, and rate of pay only.

8. **Nonadmission:** The Parties acknowledge and agree that liability for the actions and/or inactions which are the subject matter of the Lawsuit is disputed by the Parties. The Parties agree that this Agreement represents a fair and reasonable settlement of the bona fide dispute as to the facts and the law that apply to the Lawsuit. This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by any Party to this Agreement. The Parties further acknowledge and agree that this Agreement, the settlement, and any part of the negotiations shall not be used to suggest an admission of liability in any dispute the Parties may have now or in the future with respect to any person or entity.

9. **Inadmissibility of Settlement Agreement:** Except for purposes of settling these Lawsuit, enforcing the terms of or resolving an alleged breach of this Settlement Agreement, or resolving tax or legal issues arising from a payment under this Settlement Agreement, neither this Settlement Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant, including, without limitation, evidence of a presumption, concession, indication, or admission by Defendant of any liability, fraud, wrongdoing, omission, concession, or damage.

10. **Protected Activities:** Nothing in this Agreement shall prohibit or restrict Plaintiffs from lawfully (a) initiating communications directly with, cooperating with, providing information to, causing information to be provided to, or otherwise assisting in an investigation by any governmental or regulatory agency, entity, or official(s) (collectively, "Governmental Authorities") regarding a possible violation of any law; (b) responding to any inquiry or legal process directed to any Plaintiff individually from any such Governmental Authorities; (c) testifying, participating or otherwise assisting in an action or proceeding by any such Governmental Authorities relating to a possible violation of law; or (d) making any other disclosures that are protected under the whistleblower provisions of any applicable law. This Agreement does not require any Plaintiff to obtain prior authorization from Defendant before engaging in any conduct described in this Section 10, or to notify Defendant that Plaintiff has engaged in any such conduct.

11. **Modification of Agreement:** This Agreement may not be modified or amended except in writing, signed by all Parties or their successors in interest.

12. **Further Cooperation:** The Parties and their respective counsel shall proceed diligently to prepare and execute all documents, to seek the necessary Court approval(s), and to do all things reasonably necessary or convenient to promptly consummate the Agreement and settlement.

13. **Entire Agreement:** This Agreement, including Exhibits if any, constitutes the entire agreement between the Parties and supersedes all prior agreements and understandings, oral or written, relating to the subject matter of this Agreement. Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms.

14. **Construction:** This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any Party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof. Plaintiffs and Defendant participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither the Plaintiffs nor Defendant may claim that any ambiguity in this Agreement should be construed against the other.

15. **Enforcement:** This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Georgia, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, or, in the event the choice of Georgia law is deemed inapplicable, in accordance with U.S. federal law. The application of the laws of the State of Georgia, or U.S. federal law if Texas law is deemed inapplicable, shall exclude in all cases any choice of law or conflict of law rules or provisions (whether of the State of Texas or any other jurisdiction) that may direct or would cause the application of the laws of any other state, country or jurisdiction. The Parties agree that any dispute concerning this Agreement shall be brought only in a state or federal court of competent jurisdiction located in Georgia.

16. **Execution of Agreement:** The Parties agree that this Agreement may be executed in multiple original counterparts, each having the same force and effect as if all Parties executed a single instrument.

**NAMED PLAINTIFF, FOR HIMSELF AND ON BEHALF OF ALL OPT-IN PLAINTIFFS IN THE LAWSUIT**

**ACCEPTED AND AGREED:**

B_____, 2019

By:_____     _____, 2019
    Billy Ray Wooldridge                                                                    Date


### DEFENDANT GATEWAY TRANSPORTATION OF GEORGIA, INC.:

**ACCEPTED AND AGREED:**

By:_____     10/21/19, 2019
    Gateway Transportation of Georgia, Inc.                           Date

Its: _PRESIDENT_


**APPROVED AS TO FORM BY:**


_____     _____, 2019
Allen R. Vaught                                                                               Date
Vaught Firm, LLC
Lead Attorney for Plaintiffs



_____     _____, 2019
Bryan M. Kaemmerer                                                                   Date
McCarthy, Leonard & Kaemmerer, L.C.
Attorney for Defendant

**DEFENDANT GATEWAY TRANSPORTATION OF GEORGIA, INC.:**

**ACCEPTED AND AGREED:**

By: _____     _____, 2019
     Gateway Transportation of Georgia, Inc.     Date

Its: _____

**APPROVED AS TO FORM BY:**

*Allen R. Vaught*
_____     October 16, 2019
Allen R. Vaught     Date
Vaught Firm, LLC
Lead Attorney for Plaintiffs

_____     10/22, 2019
Bryan M. Kaemmerer     Date
McCarthy, Leonard & Kaemmerer, L.C.
Attorney for Defendant